UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| URIAN R. STURGIS, SR., | ) |
| Plaintiff, | ) |
| v. | ) 1:06-cv-1308-DFH-WTL |
| AUTHORHOUSE, et al., | ) |
| Defendants. | ) |

**Entry Granting Defendants' Motion for Summary Judgment and
Denying Plaintiff's Motion for Summary Judgment**

For the reasons explained in this Entry, the defendants' motion for summary judgment (dkt. 20) is **granted** and the plaintiff's motion for summary judgment (dkt. 32) is **denied.**

### I. Background

Plaintiff Urian R. Sturgis, Sr., has sued defendants AuthorHouse, Bryan S. Smith, and Eugene Hopkins (collectively "AuthorHouse") on claims arising after the parties entered into two publication services contracts.[1] During the course of the parties' relationship, Sturgis authored and AuthorHouse published two books entitled *How to Find Success in Marriage, Relationships, and Love,* and *Why are Americans so Afraid?* Disputes arose between the parties regarding the payment of royalties based on the sale of Sturgis' books. Specifically, Sturgis contends that AuthorHouse failed to provide certain publication services and promised publicity and failed to pay royalties that were owed. Sturgis also alleges that AuthorHouse and non-party Barnes & Noble conspired to defraud him by preventing him from obtaining the royalties he was owed under the publication agreements.

Sturgis seeks summary judgment on his claim that AuthorHouse committed fraud when it submitted a 2006 form 1099 to the Internal Revenue Service stating that his income was $4,116.36, when in actuality he had been paid much less. AuthorHouse contends that Sturgis was properly paid all of the royalties he was entitled to, that the form 1099 is evidence not of fraud but of an accounting error, and that it is entitled to summary judgment on all of Sturgis' claims because the parties entered into a valid release agreement on June 18, 2006 that covers all of the claims in the complaint.

---

1  The Worldwide Distribution Agreement ("Distribution Agreement") was entered into on January 1, 2004, whereby AuthorHouse agreed to provide certain publication services to Sturgis. On September 29, 2005, the parties entered into an Author Services Agreement (the "Agreement") whereby AuthorHouse agreed to provide additional publication services to Sturgis.

As explained below, the undisputed facts show that a valid release agreement bars all of Sturgis' claims. The court does not address the merits.

## II. The Release Arrgement.

Under Indiana law, a release agreement is a contract by which a party's right to prosecute a cause of action against the other party to the contract is surrendered. *Zollman v. Geneva Leasing Assocs., Inc.,* 780 N.E.2d 387, 392 (Ind. App. 2002). Under the terms of the Release and Settlement Agreement ("Release") between the parties here, the parties agreed to the following: (1) AuthorHouse had elected to cancel Sturgis' publication services contracts; (2) AuthorHouse was required to refund monies paid by Sturgis in the amount of $499.00; and (3) AuthorHouse was required to pay Sturgis $1,200.00 as royalties for books sold through applicable distribution channels. Paragraph No. 2 of the Release provided the release, which included unknown claims that could arise in the future:

> **Settlement Terms and Release**. In exchange for the Settlement Funds in the amount of One Thousand Six Hundred Ninety-Nine Dollars and 00/100 ($1,699.00) paid to Sturgis by or on behalf of AuthorHouse the receipt, adequacy, and sufficiency of which are hereby acknowledged, Sturgis releases and forever discharges AuthorHouse (including 1st Books) from any and all actions, suits, claims, and demands, known or unknown, suspected or unsuspected, absolute or contingent, which Sturgis now has or may hereafter acquire, arising out of or as a result of the Agreement or the Distribution Agreement or any other matter arising from, or in any way connected with any and all dealings between Sturgis and AuthorHouse as a result of the Agreement or Distribution Agreement.

Sturgis asserts in his complaint (though not in a sworn affidavit or other evidence) that the release is not enforceable because he never signed the agreement. This argument is a non-starter because Sturgis admitted to being involved in settlement negotiations with AuthorHouse, and the release was faxed from Sturgis back to AuthorHouse, which is evidenced by the date, time, number and company stamp on the agreement. In addition, Sturgis admits to receiving a fully executed release, and receiving a settlement draft in the amount of $1,699.00. Sturgis negotiated the draft and retained the settlement funds. He questioned the validity of the signature on the Release only after negotiating the settlement draft. He acknowledges that he was fully aware of the intent and purpose of the Release and settlement draft. (Compl. ¶ 22). These acts are sufficient to demonstrate that Sturgis assented to the terms of the release. Indiana courts have repeatedly held that a release, as with any other contract, may be established by acts that manifest acceptance. *Beaver v. Grand Prix Karting Ass'n,* 246 F.3d 905, 909 (7th Cir. 2001). Sturgis' conduct clearly demonstrates assent to the release.

Having reaped the benefits of the settlement payment of $1,699.00, Sturgis' current desire to rescind the release is too late. Indiana law requires that any party wishing to avoid the effects of a previously granted release must first give back any consideration he received in exchange for the release. *Prall v. Indiana Nat'l Bank*, 627 N.E.2d 1374, 1379 (Ind. App.

1994). "Full restoration of the consideration received for a release is a condition precedent to the maintenance of an action for the recision of a contract or the avoidance of the bar raised by the pleading of the release." *Id.* Sturgis has neither pled nor provided any evidence to establish either that he has returned or intends to return the consideration given by AuthorHouse. Sturgis cannot retain the settlement funds and at the same time challenge the validity of the release. Thus, even if the court were to conclude that evidence exists to show that Sturgis did not sign the release, absent his return of the consideration to AuthorHouse, he is not entitled to be relieved of the effects of the release.

Enforcing release agreements serves a vital public policy by facilitating the orderly settlement of disputes. *Indiana Bell Telephone Co. v. Mygrant,* 471 N.E.2d 660, 664 (Ind. 1984). As is true with other contracts, the interpretation of a release is determined by its terms, considered in light of all of the facts and circumstances. *Prall v. Indiana Nat'l Bank,* 627 N.E.2d at 1377. In the absence of some ambiguity within the terms of the release, the court's analysis is limited to the four corners of the release agreement. *Id.*

The language in the Release plainly provides that Sturgis intended to, and did, discharge AuthorHouse from any liability "connected with any and all dealings between Sturgis and AuthorHouse as a result of the Agreement or Distribution Agreement." The release applied to claims "known or unknown, suspected or unsuspected, absolute or contingent, which Sturgis now has or may hereafter acquire, arising out of or as a result of the Agreement or the Distribution Agreement" or connected with the parties' business dealings. Each and every one of Sturgis' claims in this litigation against AuthorHouse arises out of the Agreement or Distribution agreement. *See* footnote 1, *supra*.

The release clearly and unambiguously released AuthorHouse from any claim by Sturgis arising out of their contractual relationship. The undisputed facts show that Sturgis has not returned the consideration he received from AuthorHouse in exchange for signing the release. Accordingly, his claims are barred by the release and must be dismissed with prejudice. Defendants are entitled to summary judgment on all of Sturgis' claims.

### III. Attorney Fees and Costs under the Release

AuthorHouse seeks attorney's fees and costs generated in defense of this matter due to Sturgis' breach of the release agreement. Where a release provides for the payment of attorney's fees for breach of the release, courts should hold parties to the release to the plain language of the agreement. *Bruno v. Wells Fargo, N.A.*, 850 N.E.2d 940, 950 (Ind. Ct. App. 2006). The Release provides:

> **Remedies.** If either of the Parties must enforce the terms of this Release, the Parties agree that the breaching Party shall pay any and all reasonable expenses, including but not limited to attorney's fees, incurred in obtaining the appropriate relief. . . .

Sturgis breached the Release when he filed a complaint against AuthorHouse for the very claims he previously relinquished in his Release. AuthorHouse is entitled to summary judgment as to liability for attorney fees incurred in defending this action. AuthorHouse shall submit a written fee request **no later than April 10, 2008**, with supporting affidavit(s) and

record. Sturgis may file a written objection or other response **no later than 14 days** after AuthorHouse submits its petition. Unless a party requests in writing an evidentiary hearing on the amount of the fee petition, the court will decide the amount of the fee award based only on the written submissions.

### IV.  Sturgis' Motion for Summary Judgment

Sturgis contends that he is entitled to summary judgment because AuthorHouse failed to answer the complaint on time and because AuthorHouse submitted to the IRS a 2006 form 1099 stating incorrectly that Sturgis was paid $4116.36, when in fact he was paid less. AuthorHouse acknowledges that the original 2006 form 1099 was inaccurate. AuthorHouse maintains that this error occurred when royalty amounts were included in Sturgis' 2006 form 1099 that were not paid to Sturgis due to questions regarding the legitimacy of the sales underlying the accrual of those royalty amounts. AuthorHouse contends that the parties resolved their differences on this issue when they negotiated and executed the Release discussed in Part II of this Entry. AuthorHouse corrected this mistake by filing an amended form 1099, and by forwarding a copy of the amended statement to Sturgis. The revised 2006 form 1099 reflects the $128.87 in royalties paid to Sturgis in the fourth quarter of 2006.

Sturgis is not entitled to summary judgment based on the timing of AuthorHouse's answer to the complaint. The reason for this ruling is fully explained in docket number 28. In addition, Sturgis' fraud claim arises out of his contractual relationship with AuthorHouse. For the reasons explained in Part II of this Entry, Sturgis' claim must be dismissed and Sturgis' motion for summary judgment must also be denied.

### V.  Conclusion

For these reasons, the defendants' motion for summary judgment is **granted.** The plaintiff's motion for summary judgment is **denied.** The court will not enter a final judgment until the amount of fees has been determined.

So ordered.

*David F. Hamilton*

DAVID F. HAMILTON, Chief Judge
United States District Court

Date:   3/12/08